## Meridith *vs.* Commonwealth.

APPEAL FROM GRAYSON CIRCUIT.

Case 10.

CRIMINAL CASE.

1. The law allows an individual, in defense of his person or property, to use such means as are necessary. In the selection and use of the means he must, of necessity, exercise his own judgment—he acts at his peril, and if he goes beyond what is necessary to accomplish the object, and violates the law, he must abide the consequences; in the exercise of this judment he must act rationally.

2. If one is threatened with death or some great bodily injury, and has reasonable grounds to believe that it will be immediately inflicted, unless prevented by an act of self-defense, which is in the power of the person assailed, he has the right to use such defense for his own safety, (*Rapp's ca.* 14 *B. Monroe*, 622,) although it might afterwards appear that there was no real design to inflict the apprehended injury. (2 *Comstock*, 197, *cited in Wharton's crim. law*, 466.)

[The facts of the case are stated by the court in its opinion. REP.]

*McFerran* for appellant.
VOL. XVIII.        4

*James Harlan, Attorney General,* for the Common-wealth—

Meredith was indicted and tried for murder in kill-ing William Ireland.   The jury found the prisoner guilty of manslaughter, and fixed his punishment by two years confinement in the penitentiary.   An ap-peal has been allowed by a judge of this court.

The only question presented for the decision of this court is, whether the circuit court erred in its in-structions to the jury.

Seven instructions were moved by the counsel on behalf of the prisoner, neither of which was given, but others were given by the court in lieu thereof.

Upon a careful examination of the evidence it seems to me the instructions given by the court were as favorable to the prisoner as the facts and law au-thorized.   Viewed in the most favorable light, the prisoner was guilty of manslaughter.   After the first conflict, and the assault made upon him by Ireland by throwing stones, he procured a loaded gun and was on his way to the place where he left Ireland, and when within one hundred yards of Ireland he took deliberate aim and gave the mortal wound.   Ac-cording to some of the American and English author-ities Meredith was guilty of murder.   There was no pretense that he fired in self-defense.   If he was in a condition that Ireland could have discharged his gun, Meredith assumed that position without any neces-sity on his part.   The first conflict had ended and the parties separated, and Meredith renewed it without any necessity for his safety.

If it should be regarded as an informal duel, brought on by the consent of the parties, under the excitement of liquor and the throwing of stones, the slayer was clearly guilty of manslaughter.   If the parties had fought with deliberation, the slayer would have been guilty of murder.

*Section* 335 *of the Criminal Code* provides that a judgment shall not be reversed "unless it shall ap-

pear that the law applicable to the case was not *correctly* and *fairly* given to the jury."

MEREDITH
*vs.*
COMMONWEALTH

To show this is not a case of self-defense I refer to *section* 116, 3*rd vol. Greenleaf's Evidence.* It is there said, "to reduce homicide in self-defense to this de-
' gree, it must be shown that the slayer was closely
' pressed by the other party, and retreated as far as
' he conveniently or safely could, in good faith, with
' the honest intent to avoid the violence of the as-
' sault." In this case Meredith, instead of *retreating*, *advanced* on his adversary, and shot him. If Meredith had gotten his horse and went home the quarrel would have ended, and the life of Ireland saved.

In no point of view, it seems to me, is there any ground for reversing the judgment.

Judge STITES delivered the opinion of the court.                    June 4, 1857.

This appeal is prosecuted by the appellant from the judgment of the circuit court, sentencing him to two years confinement in the penitentiary for killing one Ireland.

The only important questions in the record arise upon the instructions given to the jury by the circuit court, and the propriety of its refusal to allow others asked for by the accused; and in determining these points it becomes necessary to recite, briefly, the substance of the testimony before the jury.

The homicide occurred in a village in Grayson county, in August 1854, and was the result of an affray originating in a quarrel about a game of marbles.

The proof conduces to show, that a number of persons had assembled near a grocery in the village, and were engaged, or some of them, in playing marbles. A bet of ten cents was made upon the game, and after it was finished an inquiry arose as to who had the stakes. Meredith accused a by stander of having the money, who denied it, and called Meredith a liar, to which the former replied he was jok-

ing; then Ireland, the deceased, said to Meredith that language was too harsh for him to use, to which Meredith replied "if any body took it up they might help themselves." It was then proposed that all should be searched to see who had the stakes, but to this Meredith refused to submit. He then left the crowd, and proceeded to a house standing near but upon the request of the by stander, whom he had before accused of having the stakes, came back, and when near the crowd said, "whoever accused me of having the stakes told a damned lie." Ireland, the deceased, then got up and said they all accused him of it, and immediately commenced throwing stones at Meredith, who backed off from the crowd, retired a short distance and returned, saying to Ireland he would see him another day. Ireland's friends then persuaded him to go out and fight Meredith, saying he should have a fair fight. He then, and a number of his friends, pulled off their coats and "rolled up their sleeves," preparing for the fight, and "then walked off to one side," picked up a rock and threw it at Meredith. The "crowd standing by commenced hollowing to Ireland to stone him," "kill him," "give it to him," and he continued to throw stones at him until Meredith retreated about seventy-five yards, occasionally throwing stones back at Ireland. Meredith continued to retreat from the ground until he reached his brother's house, about two hundred yards from the crowd and the grocery. He went into the house, and was soon seen coming out with a gun, carrying it in one hand by his side, and up the street towards the crowd.

Ireland, who had returned from pursuing Meredith, was immediately informed that the latter had a gun, and was told to get a gun from Vinson, a by-stander, who had one present. He at once stepped to Vinson, took his gun, cocked it, started out into the street in front of Meredith, holding the muzzle elevated; when he reached the middle of the street he

stopped, still holding his gun with both hands, pointing down the street towards Meredith. Meredith stepped to one side of the street, immediately raised his gun and fired, and Ireland fell. Ireland's gun and Meredith's, were fired simultaneously. The report sounded as though there was but one gun; and Ireland, as some of the witnesses say, was taking a hip-rest at Meredith when the latter raised his gun and shot.

Upon these facts, or evidence conducing to establish them, the appellant moved a number of instructions, which were all refused, and instead thereof the court gave instructions numbered from one to nine, to all of which appellant excepted, as he did to the refusal to give those he had asked for.

We perceive no serious objection to the instructions given by the court except No. 2. This conflicts with No. 5, and does not, in our opinion, correctly *lay* down the law of the case. No. 2 is as follows:

"If the jury believe, from the evidence, that the 'defendant killed Ireland in self-defense, they ought 'to find him not guilty, and if Ireland assaulted the 'defendant, and he had reasonable grounds to be-'lieve he was in danger of sustaining great bodily 'harm, or the loss of his life from such assault, he 'might resist such assault, and, if necessary to pro-'tect his life or person from great bodily harm, he 'might kill Ireland, if he had no safe means of es-'caping. But if the defendant could have safely re-'treated from the danger, and by that means saved 'his life and person, he is not excusable for the kill-'ing of Ireland."

The qualifications in the latter part of this instruction, excusing the homicide only upon the ground that the defendant could not have safely retreated, and thereby have avoided the danger to himself, however imminent it may have been, or he may have reasonably supposed it to be, virtually deprived him of a reasonable exercise of his own judgment in determining what was necessary to be done for the

protection of his person or life—a right which the law confers upon every man, but which must be exercised at his peril and subject to the revision of his peers.

By this instruction the jury are substantially informed, that although the accused may, from the acts of Ireland—his sudden taking of the gun from Vinson, stepping out into the street with it in both hands, presenting it directly at him, and other attendant circumstances have had reasonable grounds to believe, and did believe, that he would immediately kill him, or inflict great bodily harm by shooting, and although he may have had reasonable grounds to believe, and did believe, that such injury to himself could only be avoided by shooting Ireland; and that there was no safe escape from the threatened danger, still, if he *could* have safely retreated and escaped the danger, the killing was inexcusable. He is thus allowed no opportunity of judging for himself as to the possibility of escape from the danger, and although he may have acted as any rational person in view of all the facts would have done, still, if he "*could* have safely retreated, and thereby saved his life and person from danger," he is not to be excused.

1. The law allows an individual, in defense of his person or property, to use such means as are necessary. In the selection and use of the means he must, of necessity, exercise his own judgment—he acts at his peril, and if he goes beyond what is necessary to accomplish the ob ject,and violates the law, he must abide the consequences; in the exercise of this judgment he

The law allows, in defense of a man's person or property, such means as are necessary. In the selection and use of the means he must, of necessity, exercise his own judgment. It is done at his peril, and if he goes beyond what is necessary to accomplish the object, and thus violates the law, he must abide the consequences. In the exercise of this judgment he must act rationally; this is required, and nothing less will suffice.

In *Rapp's case*, 14 *B. Mon.* 622, which was an indictment for malicious shooting with intent to kill, and where the defense was imminent danger of great bodily harm from his antagonist, this court said that "even if Rowland did not in fact intend to proceed 'immediately to cut off Rapp's ears, or otherwise to 'use his knife in inflicting bodily harm upon him,

'still, if from his offensive language, his movements, 'his threats, his attitude and proximity, and from the 'fact that he had called Rapp into his store, and from 'all other circumstances developed by the evidence 'as existing at the time, and which may bear upon 'the question of intention, the jury should be of opin-'ion that Rapp did believe, and had reasonable 'ground to believe, that Rowland intended to pro-'ceed immediately to the infliction of bodily harm 'upon him with the knife in his hand, and that he 'would do so, unless prevented by such act of self-'defense as was then in the power of Rapp, then the 'shooting by Rapp was excusable on the ground of 'self-defense and *apparent* necessity."

In *Shorter vs. The People*, *2nd Comstock*, 197, as stated in *Wharton's Crim. Law*, 466, it was said by Bronson, J., that "when one who is without fault 'himself, is attacked by another in such a manner or 'under such circumstances as to furnish reasonable 'ground for apprehending a design to take away his 'life, or do him some great bodily harm, and there is 'reasonable ground for believing the danger immi-'nent that such design will be accomplished, I think 'he may safely act upon appearances, and kill the 'assailant, if that be necessary to avoid the appre-'hended danger, and the killing will be justifiable, 'though it may afterwards turn out that the appear-'ances were false, and there was in fact neither de-'sign to do him serious injury nor danger that it 'would be done. He must decide at his own peril, 'upon the force of the circumstances in which he is 'placed, for that is a matter which will be subject to 'judicial review. But he will not act at the peril of 'making that guilt, if appearances prove false, which 'would be innocence had they proved true."

So here, if Meredith, having been assaulted, re-treated to a place of safety and procured the gun for his self-defense, appeared again on the street, going with a lawful purpose, and not for the purpose or with the intent of renewing the fight, and while thus

MEREDITH
*vs.*
COMMONWEALTH

must act rationally.

2. If one is threatened with death or some great bodily injury, and has reasonable grounds to believe that it will be immediately inflicted, unless prevented by an act of self defense, which is in the power of the person assailed, he has the right to use such defense for his own safety, (*Rapp's case*, 14 *B. Monroe*, 622,) altho' it might afterwards appear that there was no real design to inflict the apprehended injury. (2 *Comstock*, 197 *cited in Wharton's crim. law*, 466.)

on the street Ireland appeared with his gun presented towards him, in a menacing attitude, and within shooting distance, and from these and other attendant circumstances, then occurring, Meredith had reasonable grounds to believe, and did believe, that he was in imminent danger of great bodily harm, or loss of life, from Ireland, and that the latter was then about to take his life, or inflict such bodily harm, and could only be prevented by his using such means of defense as were then in his, Meredith's, power, then the shooting by the latter was excusable on the ground of self-defense and apparent necessity.

Whether there was, in point of fact, an *actual necessity* for the resort to the means used by Meredith, was a question to be decided by him at the time, and although he may have erred in his judgment as to the existence of such necessity, still, if, from all the attending facts and circumstances, he in good faith believed, and had reasonable grounds for believing, that his only safety was in using the means then in his power to prevent Ireland from killing him, or inflicting great bodily harm, the use of such means by him was excusable.

Whether such reasonable grounds for this belief, and the belief existed, was for the jury to determine.

The instructions asked for by appellant were properly refused, and we perceive no substantial objection to the other instructions allowed; but for the error in the second instruction, as indicated, the judgment is erroneous.

It is therefore considered, that said judgment be *reversed*, and cause remanded for a new trial and other proceedings consistent with this opinion. (Which is ordered to be certified to said court.)