CASE 68—PROSECUTION AGAINST WILLIAM ROWSEY FOR MURDER.— OCT. 30.

# Rowsey v. Commonwealth.

APPEAL FROM BOYLE CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS.    AFFIRMED.

MURDER—APPEAL—REVIEW OF EVIDENCE—MALICE—SELF -DEFENSE—BELIEF OF NECESSITY FOR SHOOTING—APPARENT DANGER—DYING DECLARATIONS.

Held:    1. The court, on appeal in a criminal case, can not reverse for insufficiency of evidence if there is any evidence conducing to show the guilt of accused.
2. Evidence that defendant shot deceased while deceased was with a girl named J., after using offensive and overbearing language and conduct towards deceased; that, a few days before, he had said to a man who was with J.:  "J. won't let me go with her, and by ——! you shall not go with her;" that, just before going where deceased was, he told a person to "Take your knife along. I am going to raise such a smoke . . .  that you will need a knife to cut it away"—is sufficient to show that the real basis of his conduct was jealousy, and to prove malice.
3. Whether defendant believed there was necessity for shooting deceased to protect himself, and whether there were reasonable grounds for the belief, are questions for the jury.

4. An instruction that if deceased began the fight, and defendant had "reasonable grounds to believe," and did believe, that he was in immediate danger, and he shot to avert it, he was entitled to an acquittal, embraces the idea that, if there were such appearances of danger as to beget in defendant's mind a reasonable belief of actual danger, he was entitled to an acquittal, whether the appearances were real or not.

5. The right to kill in self-defense depends on there being no other apparently safe means of averting the impending danger.

6. Statement of deceased at the time of making declarations that he had no hope of recovery, and was preparing to meet his Maker, taken in connection with the desperate character of his wounds, is sufficient evidence that he was conscious of his approaching death to make his declarations admissible as dying declarations.

ROBERT HARDING AND RAWLINGS & VORIS, ATTORNEYS FOR APPELLANT.

The grounds on which we rely for a reversal in this case are:

1. Because the verdict is flagrantly against the law and testimony.

2. Because the court erred in giving instructions Nos. 1 to 5 to the jury over appellant's objections.

3. Because the court erred in admitting the affidavit called dying declarations of Sam Mastin to be read as evidence to the jury over appellant's objection.

4. Because the court permitted, over appellant's objection, the witnesses Ella Glasscock, Mr. Glasscock, and Jess Mastin to testify and detail conversations they claim to have had with Rowsey, which in no way relate to the deceased or this case, and are highly prejudicial to appellant.

5. Because of the discovery of new testimony after the trial that is of material benefit to appellant's case.

We submit that it was error in the court to give an instruction to the jury on the question of murder, in the absence of any evidence showing malice or any ill feeling prior to the shooting, such instruction being misleading to the jury and prejudicial to the appellant.

The dying declarations were written at a time when deceased was in no immediate danger of dying. They were written on the 14th of May, 1902, and he died on the 9th day of June thereafter. He says in it: "I have given up all hope of getting well. I make this as a dying declaration. I am soon to meet my Maker."

We submit that a verdict for twenty-one years in the peniten-

tiary under the 'evidence in this case is harsh and cruel in the extreme, and entirely' unwarranted by the testimony in the record.

C. J. PRATT AND M. R. TODD, ATTORNEYS FOR APPELLEE.

We do not deem it necessary to recite the testimony for the Commonwealth, which, to our minds, thoroughly justifies the verdict.

The jury were the judges of the testimony and have found the defendant guilty, and this court has frequently held that it will not reverse a verdict of guilty if there is any evidence to support it.

We insist that there is ample evidence in the record to warrant the giving of the instruction for murder. The appellant sought the difficulty and made threats against the deceased, after inviting the attack, and also evidence showing that appellant fired the first shot.

The dying declarations were made with full consciousness of impending death and hence admissible. Kennedy v. Com., 77 Ky., 353; Farris v. Com., 77 Ky., 363; Meredith v. Com., 57 Ky., 76; Ireland v. Com., 22 R., 478.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

This is an appeal by William Rowsey from a judgment of the Boyle Circuit Court sentencing him to twenty-one years' confinement in the penitentiary for killing Sam Mastin by shooting him with a pistol. The testimony discloses that the accused, Rowsey, and the deceased, Mastin, had attended Sunday school at a schoolhouse in Boyle county, and that, after the Sunday school was over, they, in company with several other young persons of both sexes, were walking up the public highway towards their homes, laughing and talking; that the deceased, Mastin, was walking by the side of Eliza Johnson, carrying her Bible, and the accused was walking immediately behind them, with Jack Johnson, a brother of Eliza Johnson, and Jess Mastin, a cousin of the deceased; that, after the party had walked some distance, Rowsey, who appeared to have been drinking, remarked to

Sam Mastin, "Sam, I did not know that you were a preacher," or, as detailed by another witness, "I see you have your Bible. Are you going to preach?" that Mastin replied, "I don't think I was cut out for a preacher," and asked Rowsey what had become of the team of horses which he had when he helped him to load some telegraph poles; that Rowsey responded, "Do you want pay for your work?" and Mastin replied, "No;" and that Rowsey responded, "You needn't get mad about it, for I can whip you on the ground that it takes for you to stand on." At this point a shot was fired. Eliza Johnson says that she did not know who fired it, but that she then looked at Mastin, and saw him fire at Rowsey, and that Rowsey immediately replied with two shots and Mastin fell. Jack Johnson testified that the first shot was fired by Rowsey into the ground, and that Mastin then fired his pistol at Rowsey, and then Rowsey fired two shots in quick succession. Jess Mastin testified that he could not tell who fired the first shot, but that, after he heard it, he saw Sam Mastin draw his pistol and shoot Rowsey, who threw up his hands and said, "Don't do that, Sam;" that Mastin then dropped his pistol to his side, turned, and walked eight or ten feet away before Rowsey fired two shots at him. He also testified that a week before the shooting, while he was with Eliza Johnson, Rowsey said to him, "Eliza Johnson won't let me go with her, and by God! you shall not go with her." Ella Glasscock testified that, on the afternoon before she started to Sunday school, the accused said to her: "Take your knife along. I am going to raise such a smoke over in the hollow that you will need a knife to cut it away." The testimony of the defendant is not materially different from that of the witnesses for the Commonwealth as to the location of the parties, and he admits saying jokingly to the deceased that "you need not get mad about

it. If you do, I can whip you." He says that in response to this remark, the deceased drew a pistol from his right-hand pocket and immediately fired upon him, and that he thereupon drew his pistol and fired two shots at the deceased, and that he shot in self-defense; that the ball from the deceased's pistol struck his left arm and passed into his side. He also testifies that, immediately after Mastin fell to the ground, he took off his coat, folded it up, and put it under his head, and said to him, "Sam, you shot me first, didn't you? I never would have shot first;" and that the deceased responded: "Yes; I shot you first;" that he then went to Parksville to see a doctor, and that, after he had dressed his wounds, he sent him to care for the deceased. Dr. Pittman testifies that he dressed the wounds both of the accused and of the deceased; that the accused was shot through the left arm, between the elbow and wrist, the bullet passing into the left side of his body, about where his suspenders were fastened to his pants; that he found two bullet holes near the center of the back of the deceased, and over the spine; that the shooting took place on the 11th day of May, 1902; and that Mastin died on the 9th of June thereafter. Before his death, Mastin made a dying declaration, which was reduced to writing.

The first ground relied on for reversal is "that the verdict of the jury is flagrantly against the law and evidence." In response to this contention, it is enough to say that it has been often held that, under sections 271, 340, Code Criminal Practice, this court has no power to reverse a judgment of conviction in a criminal case upon the ground that there was not sufficient evidence to sustain the verdict, but is restricted to the single inquiry whether there was any evidence before the jury conducing to show the guilt of the accused. We think it sufficiently appears from

the summary of the evidence quoted supra that there was evidence conducing to show the guilt of the accused, and this question was properly left by the trial court to the decision of the jury.

The next ground relied on is that the trial court erred in instructing the jury as to the offense of murder, it being contended that there was absolutely no proof of malice; and in connection with this alleged error it is insisted that the trial court erred in permitting Jess Mastin to testify to the alleged conversation with the accused in regard to going with Eliza Johnson on the Saturday night preceding the killing, and in not excluding the testimony of Ella Glasscock and her father to the effect that Rowsey said on his way to the Sunday school "that she had better take a knife to cut away the smoke," upon the ground that there is no proof that in either conversation the defendant had any reference to Sam Mastin. There is no direct testimony of any previous bad feeling between the deceased and the accused. The only suggestion in the testimony as to a probable motive for hostility on the part of the defendant towards the deceased previous to the homicide is that of Jess Mastin, and this testimony is competent as throwing light on the defendant's motive for his conduct immediately preceding and at the time of the shooting. Jealousy is among the strongest and most uncontrollable of the human passions, and the facts on which it rests are always competent, in the absence of any other assignable motive, to show whether it was the cause of the accused's act. See Wharton on Criminal Evidence, section 784; McCue v. Commonwealth, 78 Pa., 185; 21 Am. Rep., 7. And the testimony of the Glasscocks, father and daughter, we think, is clearly competent to show previous malice. When we connect the threats testified to by these witnesses with the offensive and overbearing language and conduct of the defend-

ant towards the deceased, who was at the time in company with Eliza Johnson, it is easy to believe that the real basis of his conduct was jealousy arising from apparent preference on the part of Eliza Johnson for the deceased over himself, and they furnish sufficient evidence of malice, taken in connection with the other evidence, to justify an instruction on murder.

Counsel for the defendant also complain of instruction No. 4, on two grounds: (1) That it leaves out of view the defendant's right to shoot, based upon apparent danger; (2) and that it makes the jury the final judges as to whether the defendant believed, and had reasonable grounds to believe, that the means resorted to by him to protect himself from impending danger were necessary at the time he fired the fatal shot. Whether there was actual necessity for resort to the means used by the accused was a question to be decided by him at the time, and if he in good faith believed, and had reasonable grounds for believing, that his only safety was to shoot the defendant, he was excusable. But whether this belief actually existed in his mind at the time of the shooting, and whether there were reasonable grounds for this belief, is always a question for the determination of the jury. See Meridith v. Commonwealth, 57 Ky., 49. The instruction is drawn with special application to the facts deposed to by the defendant as excusing his action. It tells the jury "that if Mastin began the fight by first shooting the defendant, and that the defendant had reasonable grounds to believe, and did believe, from the acts and conduct of Mastin, that he was in immediate danger of suffering the loss of his life or great bodily harm at the hands of Mastin, and that he shot Mastin to avert that danger, that he was entitled to an acquittal." The defendant testified that Mastin began the fight by shooting first, and that he only shot because he be-

lieved he was in danger of death or great bodily harm at the hands of deceased. The defendant's right to an acquittal is made to rest in this instruction upon his belief, based upon reasonable grounds, and not upon the actual existence of facts which produced the belief. The words "reasonable grounds to believe" embrace the idea that, if there were such appearances of danger as to beget in the mind of appellant a reasonable belief of actual danger, he ·was entitled to an acquittal, whether the appearances of danger were real or not. And this seems to be in conformity with the rule announced in Kennedy v. Commonwealth, 77 Ky., 353, and many other cases. In fact, the instruction is more favorable to the defendant than a strict construction of the law authorized, as it does not tell the jury that the right of the defendant to kill the deceased depended also upon the additional fact that there was no other apparently safe means of averting the then impending danger. See Farris v. Commonwealth, 8 R., 714, 1 S. W., 729. We conclude, therefore, there was nothing in this instruction prejudicial to the defendant.

The appellant also complains that the court erred in admitting the dying declaration of the deceased, for two reasons: (1) Because the testimony did not sufficiently show that the deceased had given up all hope of recovery; (2) because it was not limited to the immediate circumstances surrounding and connected with the shooting. The statement of deceased was written out by the county attorney of Boyle county, and two witnesses who were present at the time it was prepared and signed testify that Mastin said at the time that he had no hope of recovery, that he was preparing to meet his Maker. Taken in connection with the desperate character of his wounds, we think these declarations were sufficient evidence that he was conscious of his approaching

death and made the declaration admissible.  See Jones v. Commonwealth, 20 R., 355; 46 S. W., 217.  While there are some words in the statement that did not strictly refer to the circumstances of the killing, we are of the opinion that they could not have been prejudicial to the accused in the mind of the jury.

Upon the whole case, after a careful reading of the testimony, and consideration of the arguments of counsel, we have reached the conclusion that we would not be justified in disturbing the judgment of the lower court.  Judgment affirmed.