## Lindon v. Commonwealth.

(Decided Feb. 12, 1935.)

WILLIAMS & ALLEN and GROVER C. ALLEN for appellant.

BAILEY P. WOOTTON, Attorney General, DAVID C. WALLS, Assistant Attorney General, and A. F. BYRD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant, Lacy Lindon, was jointly indicted with Calvin Williams and Boyd Stamper for the murder of Kelly Shackelford. Stamper was killed before the trial, and appellant and Williams were tried jointly, and the jury returned a verdict of acquittal of Williams and appellant was convicted of manslaughter and sentenced to a term of 8 years in the penitentiary. He appeals.

The grounds urged for reversal are: (1) That the instruction given to the jury by the court was erroneous, and the court erred in refusing to give the whole law of the case, (2) in the admission of incompetent evidence, and (3) the verdict of the jury is flagrantly against the evidence.

The killing occurred at a school election in Breathitt county on about the 1st of July, 1933. There is but little conflict in the evidence. Finley Hurst testified, in substance, that he was present at the time of the killing, and that he was the clerk of the election and appellant was one of the judges of the election. He was in the schoolhouse at the time the deceased came in, and a few minutes later the appellant appeared and they began to make arrangements to hold the election. The

appellant suggested that they select a doorkeeper and some one suggested Calvin Williams, and appellant said that Calvin's wife was one of the candidates for trustee and he did not think it would be proper for him to act. The deceased, who seemed to be intoxicated, then remarked to appellant that he might order him a doorkeeper from "Sears-Roebuck or Montgomery-Ward," and appellant said to the deceased, according to the evidence of the commonwealth witnesses, "What in the hell have you got to do with it or say about it," or words of like import; but according to appellant's testimony he only said to him, "I am not talking to you." Appellant then announced that they "clear the house" and get ready to hold the election according to law. He approached the deceased and took hold of his arm and took him to the door and put him out of the house onto the front porch and then closed the door with his left hand and had his right hand on his pistol. The evidence does not conduce to show that appellant used any force or violence in ejecting the deceased. After appellant closed the door, the deceased then began to make efforts to force the door open and re-enter the house, and he finally succeeded in forcing the door partly open, and as he appeared in the door appellant shot him and he fell back onto the porch dead. His pistol was found lying in the door. When he was attempting to force his entrance into the house, he said to appellant, "G—— d—— your heart, to hell, I will kill you." Other witnesses who were on the outside of the house on the porch corroborated appellant and the witness who were on the inside, in their statements as to what occurred on the outside. Appellant testified that he was trying to hold the door shut with his left hand standing at the side of the door because he was afraid the deceased would shoot through the door. He said that when deceased forced the door open he saw his head come into the door with a pistol pointed, and he then shot in self-defense.

The incompetent evidence complained of by appellant relates to the evidence of witnesses concerning statements and conduct of Williams and Stamper, who were jointly indicted with appellant, which occurred after the killing and in the absence of appellant.

It is insisted that it was error to permit evidence relating to statements and conduct of Williams and

Stamper in the absence of the appellant. It was not improper to permit evidence to go to the jury relating to the statements and conduct of appellant's co-defendant Williams, who was on trial jointly with him. The indictment charged conspiracy and evidence competent against the one was also competent against the other; but it was improper to permit evidence relating to the conduct and statements of Stamper, who was not on trial. As Williams has been acquitted, he will not be retried with appellant, and no evidence relating to the conduct and statements of Williams and Stamper or others after the killing and in the absence of appellant will be permitted.

Minnie Stamper was permitted to testify for the commonwealth that on the morning of the day of the killing appellant and three or four other named persons were at Boyd Stamper's home and she heard some one say, "I have nerve enough to kill him," but she did not know who made the statement or to whom it referred. The court admonished the jury that they would consider this testimony as showing defendant's frame of mind. It was not shown that appellant made the statement nor that the person who did make it was referring to the deceased. In these circumstances the evidence was incompetent and should not have been permitted.

As the case will be reversed on other grounds, it becomes unnecessary to go into further detailed discussion of the evidence, and we express no opinion as to whether the verdict is flagrantly against the evidence.

It is complained that instruction No. 6 given by the court on the law of self-defense was erroneous. This instruction reads:

"Although you may believe from the evidence beyond a reasonable doubt that the defendant, Lacy Lindon, shot and killed Kelly Shackelford, if you believe from the evidence when he did do so he had reasonable ground to believe and did believe that the deceased, Kelly Shackelford, was then and there about to inflict on Lacy Lindon death or great bodily harm at the hands of said Kelly Shackelford, or it reasonably appeared to him that such was the case and it further appeared to him that the only *reasonable* safe means of protecting himself or to him appeared, was to shoot the said Kelly

Shackelford and the shooting and killing of said Kelly Shackelford was done under these circumstances, the same was excusable upon the grounds of apparent necessity in defense of himself, then the jury should acquit the defendant." (Italics ours.)

The complaint directed to the above instruction is to the word "reasonable" modifying the word "safe." It is argued that the word "safe" being modified by the word "reasonable" required appellant to choose an alternative method of escaping danger unless it promised absolute safety. In Tompkins v. Com., 117 Ky. 138, 77 S. W. 712, 25 Ky. Law Rep. 1254, a similar instruction was held by this court to be erroneous and that the word "reasonably" modifying the word "safe" was a qualifying word and a limitation upon the judgment of the accused as to his right to act in self-defense. Upon another trial of the case the court will omit the word "reasonably" preceding the word "safe" and give this instruction in the usual approved form.

The next complaint is that the court failed to give the jury a reasonable doubt instruction required by section 238 of the Criminal Code of Practice.

The instruction given on the respective phases of the offenses, to wit, murder and manslaughter, required the jury to believe beyond reasonable doubt that appellant was guilty of the specific offense named in the instruction; but there was no reasonable doubt instruction given upon the whole case. In addition to the instructions given with the modification above indicated in the self-defense instructions, the court should have given an additional instruction required by section 238 of the Criminal Code, in substance, that if upon the whole case the jury has a reasonable doubt of the defendant having been proven guilty they will find him not guilty. Mullins v. Com., 216 Ky. 182, 286 S. W. 1042.

Upon another trial of the case the court will give the jury the usual and approved form of instructions on murder, manslaughter, and self-defense, and the additional instruction above indicated.

For reasons indicated the judgment is reversed, with directions to grant appellant a new trial and for proceedings consistent herewith.