# Wright v. Commonwealth.

(Decided Feb. 11, 1938.)

L. M. ACKMAN for appellant.

HUBERT MEREDITH, Attorney General, and GUY H. HERD-MAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant and Hazel Wright were jointly indicted by the grand jury of Owen county for the murder of Nathan Morrison. Hazel Wright was tried at the April, 1937, term of the Owen circuit court and sentenced to sixteen years in the penitentiary and is now serving his sentence. The case was continued as against appellant to the July, 1937, term of the court, when he was tried and sentenced to five years in the penitentiary for manslaughter. He filed his motion and grounds for a new trial consisting of a number of items, but in his brief he apparently abandons all of them except three, viz.: (a) That the evidence is insufficient to sustain the verdict; (b) that the court erred in admitting incompetent evidence offered by the Commonwealth; and (c) the court failed to instruct the jury on the whole law of the case.

The facts disclosed by the evidence show that on the night of February 5, 1937, appellant in company with Hazel Wright who was a distant cousin of appellant, and appellant's sister, Bessie Lee Burton, J. W. Hennage, and Tom Dixon, drove from their home in the southern part of Owen county to the village of Hesler in Owen county to attend a dance at the dance hall of one Charlie Dent. After they arrived at the dance hall, two men engaged in a fight and were down on the floor. The deceased, Nathan Morrison, took hold of one of

the men apparently in an effort to separate them and Hazel Wright took hold of Morrison. Morrison resented the interference of Hazel Wright and struck him and they engaged in a fight. Dent, the proprietor of the dance hall, ordered everybody to leave the room, and appellant and Hazel Wright, and perhaps their companions who accompanied them to the place, left in advance of Morrison, and when they arrived at or near the foot of the stairway, Morrison overtook them and again assaulted Hazel Wright and they engaged in a second fight. Up to this point there is but little if any, conflict in the evidence. But as to what occurred thereafter the evidence is conflicting. According to a number of witnesses for the Commonwealth, Morrison went into the whiskey store which is maintained on the first floor of the building, apparently preparing to go home. One or two witnesses testified that he asked someone to turn his car for him, which was parked on the side of the road next to the store, and upon learning that someone had already turned the car he then went out toward the car or into the road. The car of appellant and his companions was parked on the opposite side of the road and they went across the road and toward their car. Within a few minutes thereafter Morrison and appellant engaged in a fight in the road. Appellant was striking Morrison, but it being dark the evidence does not disclose whether he had a knife or was striking with his fist. It appears that appellant was getting the best of the fight and Morrison was sinking down, and at that time Hazel Wright rushed across the road and entered the fight, knocking Morrison down and got down on him or stooping over him and continued to stab him with his knife until he killed him. It does not appear that appellant struck Morrison any more after Hazel Wright entered the fight, but stood by and looked on, and, according to the evidence of some of the witnesses, he said, "Stand back boys, nobody bother them." Two boys who had started up the road toward their car heard someone say, "Take him off, they are killing him," and they went back to the scene of the fight, and one of the boys put his hand on Hazel Wright's shoulder and told him to get up. The fight then stopped and Morrison died within a few minutes thereafter.

According to the evidence of appellant and his wit-

nesses, including Hazel Wright and his other companions in the car, after they arrived at the car Morrison followed them across the road and knocked on the window of the car and said, "You G—— d—— son of a b——, you may have enough, but I haven't," and invited him to get out of the car and commenced cutting or stabbing at appellant with his knife, and appellant ducked down in the car and dodged the blows and finally opened the car door and pushed Morrison back and got out of the car, and at that time Morrison struck appellant and knocked him down. They then engaged in a fight down in the road and rolled across the road on the opposite side next to the store; that appellant did not stab Morrison or have any connection with it.

To be more specific and for accuracy we will give a more detailed resumé of the evidence of some of the witnesses.

J. D. Gains, who witnessed the homicide, testified that he and Morrison owned and lived on adjoining farms and he had known Morrison since he was a boy; that Morrison was 57 years of age and a frail, weakly man   He said he did not see appellant upstairs in the dance hall, but when Morrison came downstairs he had an iron rod in his hand and said, "He wasn't afraid of them." Dent, the proprietor of the dance hall and whisky store, gave further orders that they all get out of the store; Morrison then told John Juett to take him home, and he, witness, went out in the road, and next thing he noticed was that appellant and Morrison were fighting by the gas tank which was on the side of the road next to the store and near where Morrison's car was parked; when he looked around Morrison was going down on his back, and Hazel Wright came across the road and cut him, the witness, as he passed. Hazel Wright then jumped on Morrison and cut him until he died. The witness was asked what appellant was doing while Hazel Wright and Morrison were fighting, and he said he never noticed; that he was begging someone to take Hazel Wright off of Morrison, and later Early Perkins appeared and asked Hazel Wright to get up and then the fight stopped.

Hogan Hill testified that Morrison never crossed the road to appellant's car as testified by appellant and

his witnesses. Early Perkins testified that after they came downstairs he started up the road toward his car and he heard someone say "Take him off, they are killing him," and he went back to the scene of the fight and put his hand on Hazel Wright's shoulder and told him to get up.

Orell Banion stated that deceased went over toward the car where the Wright boys were, and Morrison and appellant engaged in a fight in the road, and while they were fighting Hazel Wright rushed in and entered the fight, and that after that appellant did not do anything except he said, "Stand back boys, nobody bother them." He said that no one did anything toward getting Hazel Wright off of Morrison until Early Perkins came in and told him to get up.

Appellant testified that after they had left the dance hall and store and he and Hazel Wright and their other companions went across the road to their car, and while sitting in the car Morrison came to the car and knocked on the window and assaulted him, and after Hazel Wright entered the fight, he, appellant, did nothing more and had nothing to do with the stabbing or killing of Morrison. He admitted, however, that he did tell the crowd to stand back, because, he says, he thought they were going to rush up on his cousin, Hazel Wright. Hazel Wright and the other three companions with them all corroborated appellant.

There is no evidence tending to show that appellant actually stabbed Morrison at all, or did anything after Hazel Wright entered the fight, except that he stood by and looked on and saw his large, strong companion stab Morrison to death and did nothing to prevent it and commanded the crowd to stand back and nobody bother them, thereby aiding and encouraging Hazel Wright in stabbing Morrison and deterring bystanders from interfering and preventing Hazel Wright from killing Morrison.

The evidence discloses that a large number of people stood by and saw Morrison beaten and stabbed to death and some of them exclaiming, "Take him off, they are killing him," but no one dared to interfere or make any effort to save deceased's life until Early Perkins arrived at the scene of the tragedy and asked

Hazel Wright to get up, which he did without any protest. It is to be noticed that Early Perkins was about one hundred feet up the road and was not present when appellant was commanding the crowd to stand back. Under the proven facts and circumstances, the jury had the right to believe, and perhaps did so believe, that those who were present and stood by and saw deceased stabbed to death were afraid to interfere or attempt to save his life because of the presence of appellant and his command to the crowd to stand back and not bother them. This strongly indicates that appallant wanted Hazel Wright to continue stabbing Morrison and he forbade interference in order that Hazel Wright may continue the fight to his satisfaction, even to taking the life of Morrison. There is no escape from the conclusion that the evidence is not only sufficient to take the case to the jury, but sufficient to sustain the verdict.

It is next insisted that the court admitted incompetent evidence offered by the Commonwealth. This evidence consists of a statement of one of the Commonwealth witnesses that after the crowd came downstairs from the dance hall the two Wright boys and their other companions were at or near the foot of the stairs and they heard some of them make the remark, "We will get him when he comes down." It is insisted that this statement, being made by someone in the crowd without connecting appellant with it or showing that he made the statement, was prejudicial and erroneous, and in support of this contention, the case of Lindon v. Com., 257 Ky. 746, 79 S. W. (2d) 202, is cited. But it becomes unnecessary for us to determine the propriety or impropriety of this evidence, since it is disclosed in the record that appellant made no objections thereto at the time and raised the question for the first time in motion and grounds for a new trial. His failure to object to the testimony at the time was a waiver of whatever effect it might have had, and the complaint now comes too late. This rule is fundamental and too well known to require citation of authority.

It is also insisted that the instructions given by the court are erroneous, but no particular error is pointed out in brief of counsel except that the instructions did not present or submit to the jury appellant's theory of the case. Upon examination of the instructions for our-

selves, we find them to be in the usual form given in such cases and we are unable to see wherein appellant's theory of the case was not submitted to the jury. As we understand appellant's evidence, his theory of the case, as we have already stated, is that Morrison assaulted him and after they entered into a fight Hazel Wright took charge of Morrison and killed him and appellant did not do anything except stand by and, as he admits in his own testimony, commanded the crowd to stand back. The question of whether appellant killed Morrison himself, or did so by acting in concert with Hazel Wright, was submitted to the jury. We think this covered the issue and the theory of appellant's defense was submitted to the jury.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.