CASE 15—PROSECUTION AGAINST GARTH THOMPKINS FOR MURDER.—
DEC. 16.

# Tompkins v. Commonwealth.

APPEAL FROM HOPKINS CIRCUIT COURT.

DEFENDANT CONVICTED OF MURDER AND APPEALS. REVERSED.

WITNESSES—HUSBAND AND WIFE—SUBSEQUENT DIVORCE—PROOF OF DIVORCE— PRESUMPTION— HOMICIDE— MOTIVE— REBUTTING EVIDENCE—SELF DEFENSE—INSTRUCTIONS.

Held: 1. Where, in a prosecution for homicide, a witness testifies that she is the widow of the decedent, a presumption arises that she was divorced from accused, her former husband, before marrying decedent; and hence parol proof of the divorce, instead of the offer of the judgment record, is not ground for reversal.

2. A witness in a homicide prosecution who testifies that she is the widow of decedent is presumed to have been divorced from accused, her former husband, before having married decedent, and therefore, in the absence of evidence rebutting such presumption, is a competent witness against accused as to matters occurring subsequent to the divorce.

3. In a prosecution for homicide, where, to show motive, the State offers deceased's widow, who testifies that she was frequently in accused's company under his compulsion, thereby incidentally charging him with the crime, denounced as a felony by Kentucky Statutes, 1899, section 1158, of unlawfully and forcibly detaining a woman against her will, it is error to exclude evidence for accused that the association between him and the witness arose at her solicitation, and without compulsion on his part.

4. In a prosecution for homicide, it is error to charge, as to self-defense, that accused had the right to kill, if there was, as it then appeared to him, no "reasonably" safe means of averting the danger of losing his life or suffering great bodily harm at the hands of the decedent, since accused would not be compelled to choose an alternative method of escaping danger unless it promised absolute safety.

Thompkins v. Commonwealth.

LEE GIBSON AND W. C. HOPEWELL, ATTORNEYS FOR APPELLANT.

This appeal is from a judgment inflicting the death penalty in a murder case.

1. The court admitted incompetent evidence. Laura Brame testified that she and the appellant had been married, and over the objection of appellant, she was allowed to testify that she and appellant had been divorced. We submit that said evidence and all the balance of her testimony was incompetent. It is proper to prove marriage by oral evidence, but not a judgment of a court. Parol evidence of a judgment is inadmissible, as the judgment itself is the best evidence. 15 R.; 872; 19 R., 1416; 23 R., 1204; 21 R., 1460.

2. Laura Brame, who was the cause of the killing, testified that every time she was with appellant, she was forced to be with him; appellant offered to prove by five witnesses that he was with her at her request and invitation, and that she was continually seeking his company, which evidence the court refused to admit, to the prejudice of the appellant.

3. We insist that instruction No. 4, given by the court is prejudicial to appellant, in that the jury was told that if appellant had no "reasonably" safe means of averting the danger, &c. We think the word "reasonably" should have been omitted. This means that the defendant must seek to escape by means not absolutely safe, but merely "reasonably" safe, which is not the law, and has never been so decided by this court. Cockrill v. Com., 95 Ky., 26.

4. After the argument had been made and before the jury was sent to their room, the court modified one of the instructions (No. 2) by inserting therein the words "in sudden heat and passion," and in the absence of appellant's counsel again read said instruction to the jury after it was so changed. This action we think was prejudicial to appellant and a practice not to be approved. Wilhelm v. Com., 16 R., 428.

5. The court erred to the prejudice of the appellant by limiting the argument of his counsel and not allowing them reasonable time to fully argue his case. 82 Ky., 642.

6. The facts in this case do not warrant the punishment of death as fixed by the jury.

C. J. PRATT, ATTORNEY GENERAL, AND M. R. TODD, FOR THE COMMONWEALTH.

1. Even conceding it to be error in allowing appellant's divorced wife to orally testify that she had been divorced for

him, the appellant cured the error by testifying himself that she had been divorced from him.

2. The testimony offered by appellant that Laura Brame had been with him at the Henderson fair was irrelevant and misleading. It was not material whether she was often with him or not. It is not the theory of either party that deceased was killed while trying to rescue his wife. He was killed after the parties had dispersed and Laura had returned home.

3. We submit that the instruction complained of using the words, "No reasonable safe means of averting the danger," is in conformity to an instruction approved by this court in Stephens v. Com., 20 R., 402.

4. The record shows that this was a long drawn out case. The facts were few and the instructions short. The time given for argument was ample, and it seems to us there was no abuse of discretion by the court.

5. There was ample evidence to find a verdict of guilty as charged. It was the province of the jury to find the facts, and unless there was a failure of evidence, their finding should not be disturbed.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant was convicted and sentenced to death under and indictment charging him with murdering Jim Brame.

The widow of deceased, Jim Brame, was one of the principal witnesses against the appellant. She had formerly been appellant's wife. She testified that she had, however, been divorced from him, and then had married Jim Brame. Appellant objected to the admission of parol evidence of the divorce on the ground that there was necessarily a record of the judgment of divorce, and that, being the best evidence, must be produced. This is the general rule, and, in a proceeding involving directly the legitimacy of the second marriage, it would doubtless be applied. But here the main inquiry is not whether the witness had or had not been divorced. That question arose collaterally. The law raises a presumption based upon existing conditions. That is, it will be presumed, nothing to the contrary appearing,

that the second marriage of a person has been preceded by a lawful dissolution of the first one.   This is partly because of the law's favorite presumption of innocense, by which it always supposes an act or state of being to be lawful rather than criminal.   There is another policy of the law, no less favored than the one first mentioned, which supports the presumption of the legal dissolution of the first marriage, which is the concern of the law for the legitimacy of the offspring of men and women, for the integrity of the family, its honor and a policy that favors the capacity of inheritance.   Bishop's Marriage, Divorce and Separation, section 1157, fairly states the rule of practice deducible from the cases, and supported by sound reason, so far as it may be said to be a rule.   He says:   "In respect of divorce the proper direct proof of it is by the record, if in existence and accessible; otherwise, by showing the contents of it. But marriage being a status, and divorce being the annulling or modifying of it, evidently there are various circumstances in which record evidence can be wholly dispensed with. And if in the particular instance the rules of evidence permit a divorce to be presumed, as often they do, the record can not and need not, therefore, be shown, for, in the nature of things, proof by record is never proof by presumption." Also, see Howton v. Gilpin, 24 R., 630, 69 S. W., 766.   It was therefore unnecessary to have proved in this case after the witness Laura had testified she was the widow of decedent, Jim Brame, having being married to him, that she had been divorced from her former husband, the appellant. There being no evidence, rebutting the presumption that she was legally absolved from the marriage bonds with appellant, she was a competent witness against him as to subsequent occurrences.

The killing occurred on the night of December 24, 1902. Appellant was more or less under the influence of intoxicants. He went to Brame's house armed with a Winchester rifle. Laura Brame, the woman whom we have just been discussing, testified that she left with appellant, but that he forced her to go. She also testified that on a number of occasions before the killing she had been in appellant's company, but that he had sought her out and compelled her to accompany him. Appellant denied that he had ever forced or compelled Laura to go with him, but that, on the contrary, since his return to the community, she had sought him out, and voluntarily kept company with him. Appellant offered also to prove by five other witnesses that Laura had sought appellant's society, had sent him messages, and offered to accompany him to various places, and that he had not sought her. This was rejected by the trial court, which we deem a prejudicial error. The purpose in allowing the prosecution to prove that appellant had forced Laura to accompany him, and on other recent occasions had compelled her to submit to his society, was to show a motive in appellant for the homicide with which he is charged. Otherwise the introduction of that evidence was prejudicially erroneous. If the witness Laura told the truth, it tended to show that appellant was violently enamored of her, likely producing jealousy in him—one of the most controlling passions superinducing criminal violence. It furthermore showed or tended to show incidentally that he was thereby guilty of another statutory felony—that of unlawfully and forcibly detaining a woman against her will, with intent to have carnal knowledge of her. Section 1158, Ky. Stat., 1899. At least, such an inference by the jury would not have been unreasonable. While proof of one crime com-

mitted by the accused may be allowed as evidence of his motive in committing another, if it have that tendency, yet it would be wholly unauthorized to admit such evidence if it did not have that effect. In every view of the case, it was therefore proper to have allowed appellant to show that the prosecuting witness' statements were untrue; that he had not forced her to accompany him, but that she was voluntarily and willingly doing so, and had time and again recently sought his society. Although the presence or absence of the facts just discussed may not at all have affected the fact that appellant shot and killed Jim Brame without any lawful justification, they were material as affecting his motive, and particularly so as bearing on the enormity of the offense, probably impelling the minds of the jury, if believed to exist, to affix the extreme penalty for his act, instead of the lighter one of life imprisonment, or even a term imprisonment under the manslaughter instruction, as they might have done otherwise.

In instructing the jury, the court gave the law of self-defense in its instruction No. 4, as follows: "If the jury believe from the evidence that the defendant, at the time he shot said Jim Brame, if he did shoot him, had reasonable grounds to believe, either real or apparent, and did in good faith believe, that he was then in imminent danger of losing his life or suffering great bodily harm at the hands of said Brame, and there was, as it then appeared to the defendant, no reasonably safe means of averting said danger, then the defendant had the right, in the exercise of a reasonable discretion, to shoot and kill the said Brame; and if, under these circumstances, he took the life of the said Brame, he is excusable on the ground and under the law of self-defense, and the jury will find him not guilty.

The danger which authorizes one to act in defense of his life or in defense of his person from great bodily harm may be either real danger or only apparent danger." The act of self-defense is instinctive, and the right of self-defense is based upon this law of nature. One's right to protect himself from imminent death or great bodily harm by reason of an unlawful assault extends only so far as to avert the impending danger. If necessary, or apparently necessary, to take the life of the assailant, it may be done. Whether that is necessary may depend upon the appearances to the assaulted person in the exercise of a reasonable judgment. If, in the exercise of such judgment, there is another means of averting the danger that is as safe to him as to slay his assailant, he must avail himself of that means. He is not bound, though, to take hazardous chances to save himself from the assault. He owes no such duty to the assailant as to take a chance of losing his own life or limb or sustaining other great bodily harm, in order that the life of his wrongful assailant may be spared. That would be putting the balance against the innocent, and in favor of the wrongdoer. When one assaulted is placed in such immediate peril of his life or limb by the wrongful assault of another, his right of self-defense rests upon, and will not stop short of, his own safety. Rowsey v. Commonwealth, 25 R., 841, 76 S. W., 409; Merideth v. Commonwealth. 18 B. Mon., 50; Kennedy v. Commonwealth, 14 Bush, 340. The instruction quoted seems to considerably curtail this right of the person assaulted. It permits him to act upon the appearances, in the exercise of a reasonable discretion, but even then he was not allowed to strike in the defense of his life or body unless there was no other reasonably safe means of averting the danger. The adverb "reasonably" is

a qualifying word, and modifies the adjective "safe." Webster defines it as meaning moderately or tolerably, and that is its commonly understood meaning. The instruction, as worded, then, would mean, if, in the exercise of a reasonable discretion, there appeared to the accused another means of averting the danger to him, although such means were only tolerably safe or moderately safe, or in a measure safe, or partly safe, and partly unsafe, he could not lawfully strike to save his life or body from the assault. We are aware of no adjudged case in the jurisprudence of any country where the common law prevails that justifies such a qualification of the right of self-defense. The word "reasonably," discussed should have been omitted from the instruction.

The other matters complained of—that of limiting the argument, and the alteration of an instruction after the argument was finished—are practices which have been discussed and to some extent questioned by this court in the cases of Williams v. Commonwealth, 82 Ky., 642; 6 R., 764; Harris v. Commonwealth, 25 R., 297, 74 S. W., 1044; Combs v. Commonwealth, 97 Ky., 24, 16 R., 699, 29 S. W., 734; Smith v. Commonwealth, 100 Ky., 133, 18 R., 652, 37 S. W., 586; Wilhelm v. Commonwealth, 16 R., 428, 28 S. W., 783; Pearce and Howell v. Commonwealth, 19 R., 782, 42 S. W., 107. We will presume that the trial court is familiar with these opinions, and will conform the practice to what is therein said.

The judgment is reversed, and cause remanded for a new trial under proceedings not inconsistent herewith.