## Tharp v. Commonwealth.

(Decided January 12, 1932.)

BLAKEY & HOWELL and ROSE & STAMPER for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN— Reversing.

The appellant was indicted for the offense of bigamy, found guilty, sentenced to serve five years in the penitentiary, and appeals.

On the trial, the commonwealth proved a marriage between the defendant and Emma Scott in West Virginia on June 10, 1930, and a marriage between the appellant and Grace Barnett in Lee county on March 18, 1931.

When the first wife, Emma Scott Tharp, had completed her direct examination, the appellant on cross-examination asked her if prior to her marriage to him in June, 1930, she had not been married, and she answered that she had and to Emmett Brundell. She was then asked if Brundell was then living or dead, and she answered that he was still living. Evidently this testimony was a surprise to the commonwealth, because it did not immediately re-examine Emma Scott Tharp, but introduced other testimony. However, before the commonwealth closed its case, it recalled Mrs. Emma Scott Tharp, and asked her whether or not at the time of her marriage to the defendant she had been divorced from her first husband, Emmett Brundell. Over the objection of the appellant, she was permitted to answer that she had been divorced from her first husband in Pike county, Ky., about two years prior to her marriage with the defendant. This was all the evidence that was introduced with reference to this divorce. At the close of the commonwealth's case, the appellant made a motion for a peremptory instruction which was overruled. He declined to introduce any testimony, and in this state of the case the verdict and judgment above mentioned were returned and rendered.

Appellant insists that his objection to the parol proof of the alleged divorce of Mrs. Emma Scott Tharp from Emmett Brundell should have been sustained, and, with that testimony eliminated, he was entitled to a peremptory instruction. The parol evidence of the divorce decree was incompetent. In Tompkins v. Commonwealth, 117 Ky. 138, 77 S. W. 712, 25 Ky. Law Rep. 1254, which was a prosecution for murder, the widow of the decedent was offered as a witness. It seems as though she had been at one time married to the accused. When objection was made to her testifying, she was allowed to state that prior to her marriage to the decedent she had been divorced from the accused. The court then permitted her to testify, and its action was sustained on appeal on the ground that the question of her divorce arose in a collateral manner. But this court said that the Tompkins contention that the admission of parol evidence of the divorce was incompetent, inasmuch as there was necessarily a record of the judgment of divorce which, being the best evidence, should be produced, was indeed the general rule, and, to quote the opinion: "In a proceed-

ing involving directly the legitimacy of the second marriage, it would doubtless be applied.''

The case of Reynolds v. State, 58 Neb. 49, 78 N. W. 483, 484, was a prosecution for bigamy. The facts were strikingly similar to those here involved. Reynolds was accused of having married Lizzie Caulk at a time when he was already married to Jennie Ford. The cross-examination of Jennie Ford disclosed, to use the language of the opinion, ''that she was as incorrigibly addicted to matrimony as the defendant,'' and that she had been married several times prior to her marriage to the accused. She was permitted to testify that all of Reynolds' ''predecessors in marital right,'' including one by the name of Purman, were dead, and that she had also obtained a divorce from Purman before her marriage to Ford. The opinion states that Purman's death was not established, and hence the question of the divorce from him was important. In passing on the question whether or not Jennie Ford could give oral evidence of the fact that she had obtained a divorce from Purman, the Nebraska court said:

"The evidence was clearly secondary, and its reception was prejudicial error. If a divorce had been obtained, a duly-authenticated copy of the decree was the appropriate and only legal evidence of the fact. Commonwealth v. Boyer, 7 Allen (Mass.) 306; State v. Barrow, 31 La. Ann. 691; Tice v. Reeves, 30 N. J. Law, 314.''

In 2 Jones on Evidence (2d Ed.), sec. 200a, it is said:

"The following records and documents are themselves the best evidence of their contents: . . . a decree of divorce.'' Cf. Davis v. Commonwealth, 13 Bush 318.

We are of opinion, therefore, that the appellant's objection to the parol evidence of Mrs. Emma Scott Tharp's prior divorce should have been sustained.

The Attorney General, however, insists in his brief that the admission of this testimony of the parol evidence of the divorce was nonprejudicial, in that the law, in the absence of evidence to the contrary, would presume that Emma Scott Tharp, at the time she married the appellant, was qualified to do so, and that, although it was

shown that she had theretofore been married to Emmet Brundell and he was still alive, the fact of her marriage to the appellant raised a presumption of a prior divorce from Brundell, which presumption, in the absence of evidence on the part of the appellant to overturn it, would prevail throughout the case, and the appellant, having introduced no proof, cannot say that the parol evidence of the divorce was prejudicial, inasmuch as there was already in the case a presumption of such divorce. This contention of the commonwealth raises the nice and interesting question thus stated in section 2506 of Wigmore on Evidence:

"Supposing a party to a marriage to appear to have been a party to a former marriage with another person, the validity of the later marriage will depend upon whether the prior marriage had been in the meantime somehow dissolved, or whether it was itself void; this will raise the question, for example, whether there has been a death or divorce intervening, or whether the other party to the prior marriage was incapable. In thus determining the validity of the later marriage, will one or another of the above facts be presumed to have existed, so as to throw upon the opponent of the later marriage the burden of producing evidence (or even the risk of non-persuasion) of the non-existence of those facts? In issues of bigamy and of legitimacy, there is a special temptation thus to aid the later marriage. The situation may be additionally complicated by the invocation of the so-called presumption of innocence (post, sec. 2511) and of the presumptions of death or of life (post, sec. 2531). Whether the successive shiftings of the burdens should be worked out with mathematical nicety according to the various presumptions applicable, or whether all should be merged in a general presumption in favor of the later marriage, is a knotty question; and no successful generalization is yet accepted. But it may be noted that the peculiar force of a presumption as merely affecting the opponent's duty to produce some evidence (ante, sec. 2490) is not always observed in the judicial discussion of the problem."

There is appended to this section a number of interesting citations, and in the Supplement to Wigmore on

Evidence is cited the case of Scott's Adm'r v. Scott, 77 S. W. 1122, 25 Ky. Law Rep. 1356. That case was a contest over certain life insurance. The deceased had separated from his first wife more than fifteen years before his death. He thereafter went to another state to live, and after a long absence returned to Kentucky where he married a second time. On the death of his second wife, he married a third time, and lived with her for a great number of years, publicly recognizing her as his wife. The first wife lived in the same locality, and was never known during all of those years to make any complaint of the deceased's second and third marriages. The first wife even permitted two of her daughters to reside for a time with their father, the deceased, and the third wife. Under these facts it was held that the presumption of the legality of the last marriage created by this showing shifted the burden to the first wife to show that it was in fact illegal. It would appear that in civil cases, as stated in the Scott opinion, when a marriage is shown in fact, the law raises a strong presumption, especially after the lapse of many years, in favor of its legality, and the burden is with the party objecting to its validity to prove that it is not valid. The presumption is not conclusive, but is sufficient to shift the burden of proof. As stated, however, in the quoted excerpt from Wigmore, the situation in a criminal case is complicated by the invocation of what Mr. Wigmore calls the "so-called presumption of innocence." In section 2511 of his work, Mr. Wigmore discusses this "so-called presumption of innocence," and concludes that it is in truth "merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, i. e. the rule that it is for the prosecution to adduce evidence and to produce persuasion beyond a reasonable doubt." As he states, the presumption implies that the accused may remain inactive and secure until the prosecution has taken up its burden or produced evidence and persuasion, and, to quote him, "to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it." To quote further:

"In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt, while the presumption

of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief nothing but the evidence, i. e. no surmises based on the present situation of the accused,—a caution particularly needed in criminal cases.''

In order to make out the offense of bigamy, the commonwealth must establish a valid first marriage and then the second marriage. Sec. 7 C. J. 1158; Ky. Stats., sec. 1216; and Davis v. Commonwealth, supra. It being shown in this case that at the time Emma Scott Tharp married the appellant she had theretofore been married to Emmett Brundell, who was still alive, the commonwealth, in order that the jury might from the evidence and not from surmises or presumptions, which, as Mr. Wigmore says, are in the last analysis applicable only on the question of whose duty it is to produce some evidence, has to prove the divorce. The appellant had the right to remain inactive and secure until the commonwealth had produced proof to establish its case. It having been shown that, unless divorced, Emma Scott was, at the time of her marriage with the appellant, incapable of entering into the relation with him, under the presumption of innocence which the appellant enjoyed, it was the duty of the commonwealth to produce evidence to establish appellant's guilt because of this first marriage being a valid one. If presumptions be applicable only on the question as to whose duty it is to produce proof, and if under the presumption of innocence the accused may remain inactive and secure until the commonwealth has adduced evidence and produced persuasion beyond a reasonable doubt, it follows that the duty of producing evidence to show that Emma Scott, otherwise incapable of entering into a valid marriage with the appellant, was divorced, must and should fall upon the commonwealth. Such being our views, it follows that the introduction of the parol proof of the divorce in the instant case was not non-prejudicial, as the Attorney General contends, but, on the contrary, very prejudicial, for which reason the judgment must be, and it is hereby, reversed for proceedings consistent with this opinion.