## Rose v. Rose.

(Decided June 14, 1938.)

R. S. ROSE and J. J. LEARY for appellant.

W. T. DAVIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appellant, Dr. J. N. Rose, filed this as a suit for divorce against Lillian Rose, alleging that they were married on February 23, 1926, and lived together as husband and wife until June 30, 1936. He asked for a judgment of divorce upon the grounds of habitual drunkenness, cruelty and a settled aversion. The defendant denied the alleged acts attributed to her and by counterclaim sought a divorce and alimony upon the

same grounds. After the proof had been partially taken, the plaintiff filed an amended petition in which he alleged that since the filing of the petition he had for the first time discovered that the defendant, Lillian Rose, at the time she married him was married to and had not been divorced from another man by the name of G. M. Tipper, who was living at the time. He charged that she had no power, therefore, to contract a legal marriage with him and for that reason their marriage was null and void. He prayed as in his petition for divorce, or, in the event such relief should not be granted him, that it be adjudged that their marriage is void and of no effect and same be annulled. The defendant moved to strike the amended petition because filed after answer without leave of court and because it did not state facts sufficient to constitute a cause of action against her. The motion was overruled. The parties regarded the amended petition as controverted and proceeded with the preparation of the case by taking depositions on that and the other issues.

The chancellor found that both parties were in fault, though the wife in a lesser degree. He adjudged that ''the parties be granted a divorce from bed and board and that they live separate and apart and that the plaintiff pay her (the defendant) for alimony and maintenance the sum of $60 per month,'' subject to later modification. On the issue of the marriage being bigamous the court was of opinion that the defendant had married the plaintiff believing that her first husband was dead; that the plaintiff knew all of the circumstances and had no right to complain. He was of the further opinion that the plaintiff, who had made the charge of a bigamous marriage, had not met the burden of proof.

On this appeal by the plaintiff he maintains the evidence shows him to have been without fault in the matter of grounds for divorce and that his wife was guilty of habitual drunkenness. He further insists that although there was a ceremonial marriage and he lived with and regarded the defendant as his wife for more than ten years, yet that she is guilty of bigamy and that their cohabitation has been an illicit one.

A judgment of divorce necessarily presupposes a valid marriage so that the allegations of the amended petition are manifestly inconsistent with those of the

original petition. But the defendant did not proceed as is required by the Civil Code of Practice to have the plaintiff elect which cause of action he would prosecute. Section 113, Civil Code of Practice. The motion to strike, according to its terms, was but a demurrer, and for that reason it was properly overruled.

The evidence is that the defendant, as Lillian Cook, married G. M. Tipper at Dyersburg, Tennessee, on October 26, 1916. Three children were born of that union. There was a separation in January, 1922, and though the defendant never saw Tipper afterward, she testified, without proper exception being taken, that in July of that year he had become a fugitive from justice under an indictment in the U. S. District Court at Memphis. Before her marriage to Rose in 1926 she had been told by Tipper's mother that he was dead. She advised Dr. Rose of her marital status and the situation as she understood and believed it to be, namely, that her husband was dead. He responded that it would be all right; and promised that if her first husband should ever show up he would have his lawyers procure a divorce for her in a quiet way and there would be no trouble. The plaintiff substantially admits all of this. Thus it appears that this marriage was entered into in apparent good faith though not with absolutely certainty that the first husband was dead. Both parties were willing, at least, to assume that he was.

The appellee invokes Section 2101, Kentucky Statutes, declaring that a marriage valid in another state where it was solemnized is valid here, and argues that since there is neither pleading nor proof as to what the law of Arkansas was at the time of her marriage to the plaintiff that the presumption of validity must control. In the absence of pleading and proof, the presumption is that the common law as administered in this state prevails in the other state. Scott v. Scott, 200 Ky. 153, 252 S. W. 1019; Public Service Company of Indiana v. Schneider's Adm'r, 260 Ky. 334, 85 S. W. (2d) 676, 102 A. L. R. 712. "At common law a husband or wife who has been absent and unheard from for seven years is presumed to be dead and the remaining spouse is permitted to contract a valid marriage." 38 C. J. 1296. Though not applicable to the case at bar, notice may be taken of Section 1216, Kentucky Statutes, providing for the punishment for bigamy and declaring that it ex-

cludes persons whose husband or wife shall have absented themselves and have not been heard from for the period of five years preceding the last marriage, the one not knowing the other to be alive. See, also, Strode v. Strode, 66 Ky. 227, 3 Bush 227, 96 Am. Dec. 211. It is pointed out in 7 C. J. 1163, note, that there is a direct conflict in the English cases as to whether a good faith belief upon reasonable grounds that an absent husband or wife is dead when the second marriage is undertaken affords a good defense to a prosecution for bigamy, but that the later cases sustain the statement of the text that such good faith will acquit one accused of that crime. However, it is further pointed out that the prevailing doctrine in this country is to the contrary. 7 C. J. 1165. In this state we have declared the common law to be that a bona fide belief by one who married another while his first spouse was living that she was dead constitutes no defense to a prosecution for bigamy under the statute (which is silent in that particular) but may be considered in mitigation of punishment. Cornett v. Commonwealth, 134 Ky. 613, 121 S. W. 424, 21 Ann. Cas. 399. It cannot be said, therefore, that under the Kentucky Statutes, Section 2101, and this record, the marriage was valid in Arkansas, where the relation was entered into, and, consequently, valid in Kentucky.

The law highly regards the sanctity of the marriage status, and it is a general rule where a ceremony has been proved it will be presumed to be valid. It includes the presumption that no impediment thereto existed. This, together with the ever-present legal presumption of innocence of crime or wrongdoing, particularly of morality rather than immorality, has led the courts quite frequently to say that the presumption of a valid marriage is one of the strongest known to the law. Standing over against this, however, is the presumption of the continuance of life. Some of the courts hold that the former presumption will prevail over the latter and others have held that the presumptions neutralize one another. Under either conception the result seems to be the same. The case is left to be proved. If evidence of invalidity be not produced the one charging it has failed—under the latter idea because of failure to sustain the burden of proof. Dannelli v. Dannelli's Adm'r, 67 Ky. 51, 4 Bush 51; Howton v. Gilpin, 69 S. W. 766, 24 Ky. Law Rep. 630; Scott's Adm'r v.

Scott, 77 S. W. 1122, 25 Ky. Law Rep. 1356; Scott v. Scott, supra; Tharp v. Commonwealth, 241 Ky. 828, 45 S. W. (2d) 480; Elkhorn Coal Corp. v. Tackett, 243 Ky. 694, 49 S. W. (2d) 571; Vreeland v. Vreeland, 78 N. J. Eq. 256, 79 A. 336, 34 L. R. A., N. S., 940; Dunlap v. State, 126 Tenn. 415, 150 S. W. 86, 41 L. R. A., N. S., 1066, Ann. Cas. 1913E, 264; Brokeshoulder v. Brokeshoulder, 84 Okl. 249, 204 P. 284, 34 A. L. R. 441; Fuquay v. State, 217 Ala. 4, 114 So. 898, 56 A. L. R. 1264; annotations, 16 L. R. A., N. S., 98, 34 L. R. A., N. S., 940; 34 A. L. R. 464; 56 A. L. R. 1273; 38 C. J. 1321; 18 R. C. L. 416.

Though the evidence in this case is that less than five years had elapsed between the time the first husband was last heard of by the wife and her marriage to the plaintiff, if we were left to the presumptions, there would be little difficulty in deciding that at least so far as the appellee's right to maintenance is concerned she is entitled to it. But the plaintiff obtained the testimony of Tipper's aged father in Birmingham, Alabama, that his son had visited him there in 1928, and that he had also seen his son in 1932. It is true that the deposition was taken upon interrogatories without personal cross-examination and that it followed a visit by the appellant to the witness, with his admission that he did not discuss the subject with Tipper's sister or any other member of his family. But the father is not impeached and there is no contradiction of his evidence. It must be accepted as a fact that Tipper, the first husband, was alive at the time of appellee's intended marriage to the appellant. Therefore, such marriage is bigamous and void.

We are here dealing with the civil consequences of such a relation and not the criminal. Though in most circumstances the law estops a party to allege in a court of justice his own wrong, and though generally one cannot maintain a suit to have his marriage set aside on the ground that it was contracted through his own fraud, such rules do not apply to a bigamous marriage, "even the party who has entrapped the innocent into it being permitted, as well as the other, to bring suit to have its nullity declared. There are various reasons for this; the one most satisfactory being that the impediment was a thing distinct from the fraud, not depending in any measure upon it." Bishop on Marriage and Di-

vorce, Vol. 1, Section 722. A bigamous marriage is void, not merely voidable. Section 2097, Kentucky Statutes, 38 C. J. 1294. This must have its effect in the consideration of the obligations and rights of the participants. We have two cases touching the principle involved, and both would seem on first impression to authorize the allowance of alimony notwithstanding the marriage is void.

In Donnelly v. Donnelly's Heirs, 47 Ky. 113, 8 B. Mon. 113, Donnelly had a wife living in Maryland when he married a woman in Kentucky. The former died six or eight years before Donnelly. After her death he and the Kentucky woman continued to live together for more than six years as husband and wife, with the understanding and reputation that they were such and sustaining good characters. Without proof of actual marriage, the court presumed there was a marriage after the death of the wife in Maryland. But it held that even if that conclusion should be regarded as erroneous, Donnelly's heirs, as he would have been, were estopped to deny the marriage relation, hence that the purported legal wife was entitled to dower in his estate.

In Strode v. Strode, supra, a man had concealed from the woman he married the fact that he had been previously married in Texas, which marriage had never been dissolved. The woman had a husband who had not been heard from for over five years but it was held that under the statute she was lawfully competent to enter into a marriage contract. She had innocently married Strode and believed him to be her lawful husband. As stated in the opinion, he first deceived the woman and then abandoned her "as the best way, perhaps, in his opinion, to escape the consequence of his misconduct." Following the principle of the Donnelly Case and an English case, cited in a note under Section 563 of the First Edition of Bishop on Marriage and Divorce, as holding that though the marriage be void, if the woman was of good character and blameless in the affair, she would be allowed a sum in solido nomine expensarum, this court adjudged the woman to be entitled to alimony.

The Strode Case has been declared to be contrary to the general rule. Note, 4 A. L. R. 939. The case may be distinguished from the one at bar. There the woman was ignorant of her husband's marriage status

and had been viciously imposea upon. Here the woman is the one who had a husband although apparently she believed otherwise. She disclosed the situation to the prospective second husband and he knowingly assumed the marriage relation with her, so they were in pari delicto, as subsequent developments have established.

It seems to be the general rule that where there is an issue as to the validity of a marriage and it appears prima facie valid, the court will allow a necessitous putative wife maintenance pendente lite and attorney's fee. But when the marriage has been finally determined to be void, no allowance can be made, for the court has power only to make such orders in favor of a lawful wife. Stewart v. Vandervort, 34 W. Va. 524, 12 S. E. 736, 12 L. R. A. 50; Morgan v. Morgan, 148 Ga. 625, 97 S. E. 675, 4 A. L. R. 925; State ex rel. Wooten v. District Court, 57 Mont. 517, 189 P. 233, 9 A. L. R. 1212; Therry v. Therry, 117 Fla. 453, 158 So. 120; Whitebird v. Luckey, 180 Okl. 1, 67 P. (2d) 775, 110 A. L. R. 1279.

The sympathies of every fair-minded man must be with the appellee. She had frankly advised Rose beforehand of her marital situation, of which he was then ignorant. He promised to shield her from possible developments, but now repudiates his agreement and turns his knowledge into a sword to destroy her and to save himself from the responsibility of providing her a livelihood after living with her more than ten years as her husband. But the law is not to be administered according to sympathetic attitudes. In cases of this kind there is involved a high public policy and the withholding of apparent justice in an individual case is outweighed by the injury that may be done the public by giving judicial sanction of a bigamous marriage. We are, therefore, constrained to reverse the judgment for appropriate orders.

Judgment reversed.

Whole court sitting except Clay, J.