### Trimble v. Wells et al.

December 1, 1950.

Joseph D. Harkins, Special Judge.

Wheeler & Wheeler for appellant.

Wells & Wells for appellees.

STANLEY, COMMISSIONER—Affirming.

During the pendency of the case in the circuit court from March, 1942, until February, 1948, several of the original parties died, and the heirs or devisees carried on. We are constrained to say the appellant's brief has not been helpful in our review of the evidence because her attorneys failed to comply fully with the rules requiring reference to pages of the record supporting the assertions in the brief. Rule 1.340. This has made it necessary to search through four volumes containing duplication of evidence, for some of the witnesses testified both by deposition and orally, and much that is irrelevant to the issues before this court. It may also

be said that the non-observance of the rule has delayed the decision of the case.

The suit was brought by W. E. Trimble and two other accommodation endorsers of a note for $4,500 against Elzie Trimble, the maker. The endorsers paid the note to the bank, which had discounted it, and it was assigned to them. An attachment was levied upon the defendant's property, including the contents of a safe deposit box in a bank of Paintsville, consisting principally, if not wholly, of $1,300 in currency. Mrs. Celia Trimble, the defendant's wife (as alleged) filed an intervening petition claiming the money as her individual property. Before his answer was filed, Elzie Trimble died and Mrs. Trimble, as administratrix of his estate, and his children, as heirs, were made parties to the suit. Mrs. Trimble also asserted alternatively a claim for her exempted distributable share as widow. The children made certain claims against her. The judgment was against Mrs. Trimble on all her contentions and she appeals.

Out of the complicated issues we have four questions argued by the appellant, but as only three of them are stated in the classification required by Rule 1.340, we confine our discussion to them.

■ The appellant pleaded accord and satisfaction. She contends that Elzie Trimble had paid and satisfied his obligation to the endorsers of his note by means of two deeds of conveyance. One was of town property made to W. E. Trimble as administrator of the estate of J. M. Trimble, father of both men. The other was a deed to W. E. Trimble of a 1/13th interest of a farm of the value of $1,000. There is really no evidence on this point except the two instruments and the testimony that, notwithstanding the claim they were individual transactions, all this property was regarded as a part of the estate of J. M. Trimble and was sold as such under order of court. We discover no evidence indicating that the conveyances were in payment of the obligations sued on or that any of the three endorsers of the note received any personal benefit from them.

■ The claim of Mrs. Celia Trimble to a distributable share in the estate of the deceased, Elzie Trimble, particularly to the exemptions allowed a widow, was resisted

on the ground that she had not been legally married to him. It was shown by a certificate of marriage and Mrs. Trimble's testimony that they had been married in February, 1938, and had continuously lived together as man and wife. The circuit court held it to have been a bigamous marriage because it was not shown she had been legally divorced from Tom Gibson, a former husband, who was still living. Mrs. Trimble (calling her by the name she is referred to in the record) testified that she had been divorced from her first husband, Curt Whitt, in 1908 or 1910, married Tom Gibson in 1914 and was divorced from him in September, 1932. She had entered no defense to his suit for divorce. She produced a paper purporting to be a copy of a decree of divorce granted by the Morgan Circuit Court, which she had been holding as evidence of it. It was not signed and not certified by anyone. This paper had been given her by Jerry Slone, the County Court Clerk at West Liberty. She had not paid any attention to the fact that it was given by that officer instead of the Circuit Clerk and had only recently learned that he was not the proper officer. The records of the Morgan Circuit Court show that a suit for divorce was filed by Tom Gibson in June, 1932, and an order recited that it was submitted for judgment. But the final order in the case filed it away, subject to be redocketed. There was never any judgment rendered. Tom Gibson was not asked specifically as to the divorce, but he did say he had not paid his wife any money "in settlement of property rights in a divorce suit."

The appellant submits that the certificate of marriage to Trimble was evidence which carried the presumption of legality. These admissions of marriage by the parties were sufficient proof of both marriages. Bartee v. Edmonds, 96 S. W. 535; Scott v. Scott, 200 Ky. 153, 252 S. W. 1019. The presumption is that the marriage to Gibson continued. But here there is evidence of a second marriage by a legal ceremony with the presumption of its legality and continuity. The validity of marriage to Trimble may be presumed as having been made without impediment. Rose v. Rose, 274 Ky. 208, 118 S. W. 2d 529. These conflicting presumptions of a legal status present a "knotty question" as Wigmore says, quoted in Tharp v. Commonwealth, 241 Ky. 828, 45 S. W. 2d 480. However, the presumption of

legality of the ceremony of marriage to Trimble is rebutted not only by evidence of Gibson, the former husband, but by proof of the effectual dismissal of a divorce suit without judgment having been rendered and without any attempt to show any other similar proceeding. The mere parole testimony that a divorce had been granted was incompetent, but if the incompetency be deemed to have been waived, still the weak character of this secondary evidence is contradicted by the record evidence—the affirmative proof of a negative. Tharp v. Commonwealth, supra; Payne v. Payne's Administrator, 290 Ky. 461, 161 S. W. 2d 925. We think the trial court properly held the marriage to Trimble to have been bigamous and void; therefore, that the appellant was not entitled to a widow's distributable share.

■ Some depositions had been taken for use in the case generally and then the issue as to the ownership of the $1,300 in currency found under the attachment was submitted to a jury, the evidence principally being oral. The jury was unable to agree. All the record was then considered by the chancellor, and he found that Mrs. Trimble had not proved her ownership of the money.

The box had been rented by Elzie Trimble in his own name. He had been given two keys, as was customary, so that he might have one in case of loss of the other. Mrs. Trimble says that he gave one of the keys to her. But the fact that she had a key did not give her any right of access to the box, and she never undertook to have it opened. So the money was in his possession in his own name. The burden of proof was, therefore, upon the claimant.

We look first to the evidence concerning the source of the money which Mrs. Trimble claims she had. We have her definite statement that when she married Trimble in February, 1938, she had $3,000 in custody of her mother. She and her mother testified that after the death of her father, her mother had given her $1,000 in cash when she became 21 years old. He had six children as the fruits of this marriage and eight children by a former marriage. The mother testified that her husband had given her $1,500 in currency which she had not turned over to the administrator of his estate and nobody knew anything about it. She had given none of the other children any part of the money except

a small sum to one of her sons. The administrator's settlement showed a total estate of only $95.00. Mrs. Trimble kept this thousand dollars a few days and then gave it back to her mother for safe-keeping in her metal box (the descriptions of which are variable).

Mrs. Trimble testified she had also received $2,000 from her former husband, Tom Gibson, in settlement of property rights in the divorce proceeding. This $2,000 was also promptly delivered to her mother for safe-keeping. Her mother is very indefinite on the point. However, she does say that she had $3,000 of Celia's money, which she kept in cash. In her first deposition the appellant testified that Gibson had paid her the money in a lump sum in cash "in front of mother." She produced for copying by the stenographer and return to her a writing bearing date of September 1, 1932, which recited Gibson's agreement to pay her $2,000 "for her release of property and household goods to me as a single man. I pay to her, Celia Gibson, $2,000 in cash." This was purportedly signed by Tom and Celia Gibson. However, on the trial before the jury she testified she received only $300 at the time, the balance having been previously paid her. The "contract" produced in this testimony, while substantially the same in effect, is an entirely different instrument and bears the different date of August 2, 1932. This was in her handwriting excepting his signature. The mother was not asked anything about Gibson having paid over any money in her presence. She merely testified that Celia had turned over to her $1,500 after her separation from Gibson.

Two bankers, testifying as some sort of experts, gave their opinion that this contract or statement of payment was much more recent than the copy of the purported judgment of divorce, bearing the same date. They based their conclusions upon comparison of the two documents. The "contract" was upon very cheap paper and there was no wear and tear of it, such as by creasing or coloring of the paper by age or fading of the writing, while the copy of the purported judgment was worn.

Tom Gibson testified that he had not given his former wife $2,000 or any sum in settlement of any property rights, but had signed the paper sometime in the fall of 1942 after Elzie Trimble's death because she

asked him to do so. He stated she had gotten that much or more of his money at different times while she was his wife by checking out his deposits without his consent, and this was what he had in mind when he signed the paper for her.

Coming to the record respecting the ownership of the particular $1,300 found in the lock box. Mrs. Trimble related that she and Elzie moved to Paintsville in 1939 and he went into the taxicab business. She, he and her niece, Mrs. Maud Hall, went to her mother's home in Caney, Kentucky, in May or June, 1939, and obtained $2,500 from her. The mother was very indefinite about this, but that may have been due to the fact the old lady was in poor health and was not given much of an examination. The niece, Mrs. Hall, corroborated her aunt. When they came to Salyersville, her husband, Dunk Hall, happened to be sitting in front of the courthouse and she called him to the automobile. She handed him Celia's pocketbook and he counted the money without taking it out. He corroborated them, saying the money was in $20, $50 and $100 bills. We are not much impressed by this testimony.

Mrs. Trimble had a bank account and it shows a credit of $900 about this time. Deposits thereafter in relatively small sums amounted to more than $2,000. She testified, however, the account was in fact Elzie's and he merely used her name, signing it to the checks.

We have only the uncorroborated statement of Mrs. Trimble that she had turned over the $2,500 she got from the custody of her mother to Elzie Trimble and he had used it to buy an interest of his sister's children in his father's estate and to pay for his taxicabs. No record of such transactions was proved. She says he had repaid her $1,300 in $50 bills in November or December, 1941, which at his insistence she did not return to the custody of her mother, but she and he had gone to the bank and put it in the safety deposit box. On the other hand, it is proved by several bank employees that it was Trimble's custom to change small bills and coins into larger bills and then to go immediately to his safety box. No one ever saw Mrs. Trimble with this money. There is some evidence of admissions indicating that it was not hers. Significance may be attached to the fact that she made no formal claim, nor expressed any own-

ership of the money, for some three months after the attachment of the box. On one occasion after this suit was filed by the men who had paid his debt, Elzie Trimble, in the presence of his wife, boasted of being "the smartest Trimble in the bunch" and of how he had "outschemed" them. She denied the statement, but her denial is not convincing. There is evidence of several witnesses that the appellant's reputation for truth and morality was not good; however, she produced testimony of several taxicab operators to the contrary.

In a case of this sort, things more or less intangible are revealed in the record that leave an impression of truth or falsity. Sometimes this is referred to as "the lights and shadows." Such is the present record. The combination of improbabilities and the burden of proof is outweighed by the probabilities. We have had no trouble in reaching the same conclusion as the chancellor.

The judgment is accordingly affirmed.