John W. GARDNER, Secretary of Health, Education and Welfare, Appellant,

v.

Dorothy W. OLDHAM, Individually and as next friend of Pamela M. Oldham, Appellee.

No. 24130.

United States Court of Appeals Fifth Circuit.

Aug. 15, 1967.

Jack H. Weiner, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., for appellant.

L. T. Ahrenholz, Fort Myers Beach, Fla., for appellee.

Before WASHINGTON,[*] TUTTLE and SIMPSON, Circuit Judges.

TUTTLE, Chief Judge:

This appeal from a judgment directing payment of mother's insurance benefits to one of two competing "widows" of the wage earner criticizes not only the correctness of the trial court's decision of "Who was the widow?", but also criticizes the ordering of payment to the one without considering the claim of the other. The Secretary urges that at least the trial court should have remanded the case to the Secretary for a hearing at which both parties could be heard.

Undisputed are the following facts:

Rodman P. Oldham died in September, 1960, a fully insured wage earner. At the time of his death, he was living with Phyllis Oldham (not a party to this proceeding. Soon thereafter, on October 3, 1960, Phyllis applied for survivor's insurance benefits. In her application, she stated that she had married Rodman in a ceremonial marriage on April 7, 1956, after his earlier marriage to the appellee (Dorothy) had been terminated by a

---

[*] Senior United States Circuit Judge, D.C.Circuit, Sitting by designation.

divorce in August, 1947. She set forth that Rodman was survived by four children, two from his relationship with Dorothy, and two who had been born during her marriage to Rodman.

Less than two months later, Dorothy applied for survivor's insurance benefits on behalf of Barbara and Pamela, who lived with her. The Social Security Administration considered both of the applications. It determined that payments of benefits would be made to Phyllis and all four of the children who had applied. On September 13, 1961, Dorothy filed another application, this time seeking mother's insurance benefits for herself. In this application, she stated that she and the wage earner had been divorced in August, 1947, but had been remarried by a common law marriage in December, 1950, and were never thereafter divorced again.

Acting upon this new application, the Social Security Administration determined that Dorothy had not contracted a valid common law marriage with the wage earner (following the earlier divorce) and that she was not entitled to mother's insurance benefits. It was also determined that, since Dorothy had not been married to the wage earner at the time Pamela was born, Pamela did not have the legal status of the wage earner's child under the applicable Kentucky law and was not entitled to benefits. Accordingly, Pamela had not been entitled to the benefits she had been receiving. Dorothy requested reconsideration of this determination and, upon reconsideration, it was affirmed. Thereafter, on March 12, 1963, at her request, a hearing was held before a hearing examiner at which Dorothy was represented by counsel.

At the outset of the proceedings before the hearing examiner, he explained to Dorothy and her lawyer that, "This case has a much more far reaching effect than the sole issue inasmuch as there is another wife who is claiming and receiving benefits for herself and on behalf of other children. If my decision should be favorable to your client, then the other wife would have to be advised of the decision and be given an opportunity. I think she lives in Kentucky, to appear before a hearing examiner in Kentucky and submit the evidence of her case. The cases are concomitant in that they affect each other and must be worked out together."

It is undisputed that in late 1950, Dorothy and Rodman Oldham resumed living together in Jeffersonville, Indiana; that at this time they intended that her father, a lawyer, would draw up the necessary papers to set aside the divorce. There is no record that any such papers were filed. There was no further marriage ceremony, Dorothy explaining that she could not remarry the wage earner after the civil divorce, since under the tenets of her religious faith the original marriage had never been dissolved by that divorce. During this time, while the couple were living together, she became pregnant with Pamela and this child was born on October 6, 1951. They moved to Kentucky where her father had a stroke. They lived together until either November 1951 or January 1952 when they separated permanently. Dorothy testified that she had considered that they were living together as husband and wife during this period of time. Later, in a statement filed in connection with a questionnaire, she stated that when they resumed living together they reached an understanding, "If at all possible, we were to make it lifetime. This was to be with Mr. Oldham's cooperation which he did not fulfill." In response to another question she stated that this condition was changed when she "determined I could not complete martial (sic) status with Rodman Oldham. I tried very much to keep Rodman and the children together. Mr. Oldham did not live up to the agreement." There was undisputed testimony from other members of Dorothy's family that they and Rodman's brothers considered them to be married.

In her earlier claim Phyllis had informed the Social Security Administration that on April 1956 she had been

ceremonially married to the wage earner in Lawrenceburg, Indiana by a Justice of the Peace, but did not have the marriage certificate. She then proved the ceremonial marriage to the satisfaction of the Social Security Administration by submitting an affidavit of the two witnesses to the ceremony, and a statement of Edward S. Oldham, the wage earner's brother, that Phyllis and the wage earner had told him in May 1956 that "They had been married in Lawrenceburg, Indiana."

The hearing examiner, in Dorothy's case, determined that under Indiana Law, Dorothy and the wage earner had contracted a valid common law marriage after their prior divorce, because they had considered themselves married, maintained a home and lived together as husband and wife, and held themselves out to the public as married. However, he found that from the uncontradicted evidence, Oldham and Phyllis had been ceremonially married in 1956 and that under Kentucky Law this created a strong presumption that the earlier marriage to Dorothy had been legally terminated. He therefore held against Dorothy's claim. Since he held Phyllis to be the lawful widow, the examiner did not make her a party to the administrative proceedings.

Thereafter, Dorothy requested review by the Appeals Council and submitted additional evidence to that body to indicate that Rodman had not instituted divorce proceedings against her in the period between their separation and his death. This was negative evidence showing that there was no record of any divorce proceedings in the several places where they had at least temporarily resided together.

The appeals council determined, contrary to the finding of the examiner, that the living together of Dorothy and Oldham in 1951 and 1952 did not constitute a valid common law marriage because Dorothy "placed certain unspecified conditions upon the wage earner as a part of her agreement to resume living with him, the wage earner did not fulfill these

conditions, and that, as a result, the claimant terminated her relationship with the wage earner." Accordingly, the Appeals Council determined that the claimant Dorothy was not the widow of the wage earner under the laws of the State of Kentucky and within the meaning of Section 215(b) (1) (a) of the Social Security Act. Once again, this judgment being entirely favorable to Phyllis' status as a widow, she was not made a party to the proceedings in the Appeals Council.

This suit in the District Court followed. The trial court, also without any reference to the effect on Phyllis' status as a widow, determined that the "finding of the Appeals Council that 'certain unspecified conditions' placed upon the wage earner by the plaintiff claimant prevented the existence of the present agreement of marriage between the wage earner and the plaintiff claimant in October or November of 1950, is unsupported by any substantial evidence." Thereupon, the trial court not only reversed the decision of the Appeals Council, but held that final judgment should be entered in favor of Dorothy against the Secretary and directing that the payment of mother's insurance benefits be made to Dorothy.

The government here contends, without much enthusiasm, that the trial court erred in reversing the determination of the Appeals Council that no common law marriage existed, but it contends with vigor that in any event, the act of the trial court was premature in that it adjudged Dorothy to be the widow to the exclusion of Phyllis' claim without the latter being a party to the litigation. The government contends that as a minimum, the trial court erred in not remanding the case to the Secretary for administrative proceedings at which the conflicting claims of Dorothy and Phyllis could be resolved, since, under the Act, there can be only one widow of the wage earner who is entitled to benefits and the award of benefits to one woman as a widow precludes the payment of bene-

fits to any other woman claiming as a widow. 42 U.S.C.A. § 416(h) (1) (b).

■■ It is, of course, extremely unfortunate that procedures for the prompt and necessary payment of benefits to bereft widows and minor children of fully covered wage earners can become so complicated by the wage earner's marital relationships that the final ascertainment of who, among two persons, is truly entitled to payments can be delayed as long as is the case here. Nevertheless, it is apparent that a judgment of the trial court declaring that Dorothy is the true widow cannot be permitted to stand until Phyllis has had her day in court. Taking our cue from the attitude of the Secretary on appeal, we do not disturb the determination made by the District Court that the examiner's finding as to the existence of the common law status of Dorothy and Rodman truly existed as of their last separation in late 1951 or early 1952. The examiner had the witnesses before him for the oral hearing and we conclude that the trial court could properly determine that on the record as a whole there was not substantial evidence to warrant the appeals council overruling of the examiner's findings on this point.

■ This determination, however, does not resolve the question whether the trial court could enter a final judgment directing payment of the benefits to Dorothy. Assuming the correctness of the examiner's early determination that Phyllis and Rodman had entered into a ceremonial marriage, which fact has not thus far been attacked on this record, there still exists the possibility that between 1952 and the date of the ceremonial marriage with Phyllis in 1956, the second marriage between Rodman and Dorothy (the common law marriage) had been legally terminated. In fact, such fact is strongly presumed under the Kentucky Law which provides that where two marriages are shown, there is an unusually strong presumption in favor of the second marriage. The party attacking the validity of the second marriage has the burden of proving its invalidity by a preponderance of the evidence. Rose v. Rose, 274 Ky. 208, 118 S.W.2d 529; Gaddy v. Louisville & Nashville R. R. Co., 249 F.Supp. 305, 306–307, E.D.Ky.1965. This court has decided in Patton v. R. R. Retirement Bd., 5 Cir., 313 F.2d 434 that "the negative record evidence of no divorce consisting of certificates from clerks of domestic relations courts of all of the indicated prior places of the employee's residence did not compel the Board to conclude that the earlier 1905 marriage to Stella had never been dissolved. To overcome the strong Illinois presumption it took equally strong refutation. As would an Illinois court, the Board was entitled to hold the showing inadequate." So, here, on a hearing before the Administrative Offices of the Secretary, Phyllis should be given an opportunity to contest the continuing validity of Dorothy's common law marriage when pressed as against her claim that her 1956 marriage to Rodman was legal and valid. Here, although it appears that no pleading requesting such action was filed in the District Court by the Secretary, it was apparent to appellee's counsel from the start that if a decision favorable to Dorothy was entered, then Phyllis would have to be given an opportunity to appear before an examiner and undertake to stake out her claim.

In the circumstances, we conclude that that part of the District Court's judgment awarding payments to Dorothy must be reversed and vacated with directions to remand the case to the Secretary for further proceeding at which the other claimant, Phyllis Oldham, be given an opportunity to participate.

The judgment of the trial court determining that there was a valid common law marriage between Dorothy and the wage earner is affirmed.

Judgment affirmed in part and reversed in part.